FILED

05/26/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2017 Session

## JOSHLIN RENEE WOODRUFF BY AND THROUGH DOROTHY COCKRELL, ET AL. v. ARMIE WALKER M.D., ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-13-237, C-15-277    Kyle Atkins, Judge**

_____

### No. W2016-01895-COA-R3-CV

_____

The plaintiffs, a mother and her child, filed this health care liability action in September 2015. The complaint alleged that both plaintiffs suffered permanent injuries resulting from the defendant health care providers' negligent care during the child's birth in June 2012. The defendants moved to dismiss the mother's claims based on expiration of the one-year statute of limitations in Tennessee Code Annotated section 29-26-116(a)(1) and to dismiss the claims of both plaintiffs based on expiration of the three-year statute of repose in Tennessee Code Annotated section 29-26-116(a)(3). With regard to the statute of limitations, the plaintiffs argued that the mother's claims were timely filed because the discovery rule delayed the accrual of her claims until March 2015 and because she had been "adjudicated incompetent" within the meaning of Tennessee Code Annotated section 28-1-106 such that the limitations period was tolled as to her claims. With regard to the statute of repose, the plaintiffs argued that their claims were timely filed because they were entitled to rely on Tennessee Code Annotated section 29-26-121(c), which extends the three-year statute of repose by 120 days when sufficient pre-suit notice is given. Following a hearing, the trial court concluded that neither the discovery rule nor Tennessee Code Annotated section 28-1-106 applied to the mother's claims and that her claims were therefore filed after expiration of the one-year statute of limitations. Additionally, the trial court concluded that the plaintiffs failed to provide sufficient pre-suit notice because the medical authorizations included in their pre-suit notice did not permit the defendants to obtain their complete medical records. Specifically, the trial court found the authorizations insufficient because they did not permit the defendants to obtain relevant medical records from prenatal treatment that the mother received prior to the date of the delivery. The trial court therefore concluded that the plaintiffs were not entitled to rely on the 120-day extended filing period and their claims were filed after expiration of the three-year statute of repose. The trial court dismissed all of the plaintiffs' claims, and the plaintiffs appealed. Having reviewed the record submitted on appeal, we hold that the trial court properly dismissed the mother's claims based on

expiration of the one-year statute of limitations. We further hold, however, that the trial court erred in dismissing the child's claims based on expiration of the three-year statute of repose. Records from prenatal treatment that the mother received prior to the date of the delivery were the mother's medical records, and the child could not have unilaterally authorized their release. As such, his failure to do so did not render the medical authorizations provided with his pre-suit notice insufficient. The defendants have not asserted any other deficiencies in the child's pre-suit notice. Because the child provided sufficient pre-suit notice, he was entitled to rely on Tennessee Code Annotated section 29-26-121(c), which extended the filing period by 120 days. The child's claims were therefore timely filed prior to expiration of the extended statute of repose in October 2015. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Joe Bednarz, Sr. and Joe Bednarz, Jr., Hendersonville, Tennessee, for the appellants, Beverly Woodruff and Dorothy Cockrell.

Marty R. Phillips and Craig P. Sanders, Jackson, Tennessee, for the appellee, Armie Walker.

Darrel E. Baker, Jr., Deborah Whitt, and M. Jason Martin, Memphis, Tennessee, for the appellees, Timothy Hutchinson, Michael Martindale, and Professional Anesthesia Associates, P.C.

Jennifer S. Harrison, James E. Looper, Jr., and Lauren Dunavin Callins, Memphis, Tennessee, for the appellee, Elliott Clifton Roberts, Jr.

Dixie W. Cooper and Kaycee L. Weeter, Nashville, Tennessee, for the appellees, Nathan John Hoeldtke and Mid-South Perinatal Associates, P.C.

Patrick W. Rogers, Jackson, Tennessee, for the appellees, West Tennessee OB-GYN Services aka West Tennessee OB-GYN Clinic, Jackson-Madison County General Hospital District, West Tennessee Healthcare, Inc., Anna McIntyre, Kara Carter, Lisa L. Johnson, Jessica Perry, and Dena Etheridge.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Joshlin Renee Woodruff ("Mother") was approximately 17 weeks pregnant when she was first evaluated by OB-GYN specialist Dr. Armie Walker on January 24, 2012. During the visit, Mother disclosed to Dr. Walker that she suffered from a neuromuscular condition known as myasthenia gravis. Because of that condition and gestational hypertension, Dr. Walker referred Mother to a maternal fetal specialist–Dr. Nathan John Hoeldtke of Mid-South Perinatal Associates, P.C. Dr. Hoeldtke met with and evaluated Mother on January 31, 2012, March 13, 2012, April 12, 2012, May 16, 2012, and June 4, 2012. Mother also continued to receive treatment from Dr. Walker and his partner, Dr. Elliot Clifton Roberts, throughout her pregnancy.

On May 31, 2012, at approximately 36 weeks gestation, Mother was admitted to Jackson-Madison County General Hospital with exacerbated symptoms of myasthenia gravis that included extreme muscle weakness and shortness of breath. Dr. Hoeldtke evaluated Mother at the hospital and made recommendations for her labor and delivery. Dr. Hoeldtke's recommendations included, among other things, consultation with an anesthesia service to develop anesthesia plans in case it became necessary to deliver the child by cesarean section. Mother's condition improved with medication and treatment, and she was discharged from the hospital on June 6, 2012.[1]

Mother went into labor in the early morning hours of June 21, 2012. She was admitted to Jackson-Madison County General Hospital at 3:42 a.m. where she was evaluated initially by Dr. Roberts. Dr. Roberts managed Mother's care until 8:00 a.m., at which time she came under the care of Dr. Walker for the remainder of her labor and delivery.

Mother's labor progressed slowly throughout the day on June 21, 2012. At 6:10 a.m., Dr. Michael Martindale was called to give Mother an epidural anesthesia. Initially, Dr. Martindale declined to administer the anesthetic in light of Mother's myasthenia gravis condition. Later that morning, however, Dr. Timothy Hutchinson began to administer small doses of epidural anesthetic to help control Mother's pain. At 3:00 p.m., Dr. Walker ordered that Mother be given a small dose of the labor-inducing drug Pitocin. At 3:45 p.m., Mother called for a nurse and reported that she did not like the way the

---

[1] Although the complaint states that Mother was discharged from the hospital on June 6, 2013, it is clear that the actual date of her discharge was June 6, 2012 given the timeline of events that occurred in this case. The parties refer to the date of Mother's discharge as June 6, 2012 in numerous other instances throughout the record and their appellate briefs.

epidural made her feel. The nurse observed that one of Mother's eyes was swollen and drooped, and Dr. Hutchinson was called to turn off the epidural. At 4:52 p.m., Dr. Hoeldtke arrived in Mother's hospital room. Dr. Walker increased Mother's dosage of Pitocin at 5:30 p.m. and 6:30 p.m., but it failed to augment her labor by any reasonable degree.

As the day wore on, Mother began to exhibit symptoms of exacerbated myasthenia gravis that made it unsafe to continue the labor and deliver the child vaginally. Pulse oximeter readings indicated low levels of oxygen in Mother's blood. Additionally, Mother reported difficulty breathing on several occasions. At 8:05 p.m., Dr. Martindale entered the room to give Mother an epidural anesthetic. Although Mother expressed difficulty breathing, Dr. Walker insisted on doing a vaginal exam at 8:16 p.m. During the exam, Mother stopped breathing and went into respiratory and cardiac arrest. Mother was rushed to an operating room where an emergency caesarian section was performed while doctors worked to revive her. Braylon Woodruff ("Child") was delivered by cesarean section at approximately 8:30 p.m.

Mother and Child both suffered serious permanent injuries and brain damage resulting from a lack of oxygen during the delivery. On June 28, 2012, the Madison County Juvenile Court entered an order granting temporary legal custody of Child to his maternal grandmother, Beverly Woodruff. On November 29, 2012, the Madison County General Sessions Court entered an order appointing Mother's aunt, Dorothy Cockrell, as Mother's conservator.

On April 17, 2015, pursuant to Tennessee Code Annotated section 29-26-121(a), counsel for Mother and Child (together, "Plaintiffs") sent letters to the following health care providers notifying them of potential health care liability claims against them: Armie Walker, M.D., Elliott Clifton Roberts, Jr., M.D., West Tennessee OB-GYN Services aka West Tennessee OB-GYN Clinic, Nathan John Hoeldtke, M.D., Mid-South Perinatal Associates, P.C., Timothy Hutchinson, M.D., Michael Martindale, M.D., Professional Anesthesia Associates, P.C., Jackson Madison County General Hospital, West Tennessee Healthcare, Inc., Anna McIntyre, R.N., Kara Carter, R.N., Lisa L. Johnson, R.N., Jessica Perry, R.N., and Dena Etheridge, R.N. (together, "Defendants"). The pre-suit notice letters were accompanied by medical authorizations permitting Defendants to obtain Plaintiffs' medical records from each other. Notably, the authorizations only permitted the release of medical records for three dates: January 24, 2012; June 21, 2012; and July 16, 2012.

On September 29, 2015, Plaintiffs filed a health care liability complaint against Defendants.[2] The complaint alleged that Defendants caused Plaintiffs to suffer permanent injuries by negligently failing to recognize and take appropriate action in response to Mother's deteriorating condition during her labor on June 21, 2012. The complaint alleged that Plaintiffs had complied with the pre-suit notice requirements of Tennessee Code Annotated section 29-26-121(a). Along with the complaint, Plaintiffs filed a certificate of good faith pursuant to Tennessee Code Annotated section 29-26-122.[3]

In response to the complaint, Defendants filed motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6).[4] Defendants asserted that the claims advanced by Mother in the complaint were barred by the one-year statute of limitations applicable to health care liability actions. *See* Tenn. Code Ann. § 29-26-116(a). They argued that, although Mother had a court-appointed conservator, the limitations period was not tolled by Tennessee Code Annotated section 28-1-106 because Mother had not been adjudicated incompetent at the time her claims accrued. While Defendants acknowledged that the statute of limitations was tolled as to Child's claims because of his minority, they further asserted that all of Plaintiffs' claims were barred by the three-year statute of repose applicable to health care liability actions. *See* Tenn. Code Ann. § 29-26-116(a)(3). They argued that Plaintiffs could not rely on Tennessee Code Annotated section 29-26-121(c) to extend the filing period by 120 days because they did not provide sufficient pre-suit notice of their claims. Specifically, they argued that the medical authorizations provided with Plaintiffs' pre-suit notice did not afford them access to relevant medical records for prenatal treatment that Mother received prior to the date of the delivery.

In June 2016, Plaintiffs filed a motion to amend their complaint to add allegations aimed at avoiding dismissal of Mother's claims based on expiration of the statute of limitations. Plaintiffs' proposed amended complaint alleged that they did not discover

---

[2] The complaint was filed on Mother's behalf by her conservator, Ms. Cockrell, and on Child's behalf by his guardian, Ms. Woodruff.

[3] Mother filed a separate health care liability action against Dr. Walker on August 19, 2013. Although the trial court entered an agreed order consolidating that case with the case initiated by Plaintiffs' September 29, 2015 complaint, the claims advanced in Mother's August 19, 2013 complaint are not at issue in this appeal. To avoid confusion, we therefore decline to discuss those claims.

[4] Dr. Martindale, Dr. Hutchinson, and Professional Anesthesia Associates, P.C. filed a motion to dismiss on November 9, 2015. Thereafter, Dr. Roberts, Dr. Walker, Dr. Hoeldtke, and Mid-South Perinatal Associates, P.C. filed notices of joinder in the motion. On January 27, 2016, the remaining defendants filed a motion to dismiss and/or for summary judgment in which they also adopted the statements and arguments advanced in the motion pursuant to Tennessee Rule of Civil Procedure 10.04.

their claims until Dr. Walker revealed previously unknown factual information during a deposition in March 2015. Plaintiffs therefore asserted that the one-year statute of limitations began to run in March 2015 and their claims were timely filed.

Plaintiffs also filed a separate response opposing Defendants' motions to dismiss. In the response, Plaintiffs argued that Mother's claims were not barred by the one-year statute of limitations because Tennessee Code Annotated section 28-1-106 tolled the limitations period and/or because they were not discovered until March 2015. Additionally, Plaintiffs argued that, by permitting the release of their medical records for June 21, 2012, their medical authorizations afforded Defendants access to all relevant medical records because all of the wrongful conduct alleged in their complaint occurred on that date. Plaintiffs therefore asserted that they were entitled to the 120-day extended filing period provided by Tennessee Code Annotated section 29-26-121(c) and their claims were not barred by the three-year statute of repose.

Following a hearing, the trial court entered five separate orders granting Defendants' motions to dismiss. As an initial matter, the court held that Mother's claims were barred by the one-year statute of limitations. The court explained that the discovery rule did not delay the limitations period because Plaintiffs were alerted of the need to investigate their injuries on June 21, 2012. The court further explained that Tennessee Code Annotated section 28-1-106 did not toll the limitations period as to Mother's claims because she was not adjudicated incompetent before her claims accrued. The court therefore concluded that the statute of limitations period expired on June 21, 2013 and Mother's claims, asserted in the September 29, 2015 complaint, were not timely filed. Additionally, the court held that all of Plaintiffs' claims were barred by the three-year statute of repose. The court explained that Plaintiffs could not rely on the 120-day extended filing period because their pre-suit notice did not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). Specifically, the court found that the medical authorizations provided with the pre-suit notice did not permit Defendants to obtain all of Plaintiffs' relevant medical records because they did not permit the release of records for Mother's pregnancy (including her hospitalization from May 31 to June 6, 2012). The court therefore concluded that the statute of repose period expired on June 21, 2015 and Plaintiffs' September 29, 2015 complaint was not timely filed. The trial court certified each of its orders as final pursuant to Tennessee Rule of Civil Procedure 54.02, and Plaintiffs timely filed a notice of appeal to this Court.

**ISSUES**

Plaintiffs raise the following issues on appeal, restated:

- 6 -

1.  Whether the trial court erred in dismissing Mother's claims based on expiration of the one-year statute of limitations in Tennessee Code Annotated section 29-26-116(a)(1).

2.  Whether the trial court erred in dismissing Plaintiffs' claims based on expiration of the three-year statute of repose in Tennessee Code Annotated section 29-26-116(a)(3).

3.  Whether the trial court erred in failing to consider Plaintiffs' motion to amend their complaint.

## STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), the trial court must determine whether the pleadings state a claim upon which relief may be granted. A Rule 12.02(6) motion tests "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of such a motion is therefore determined by an examination of the pleadings alone. *Id.* The court should grant the motion to dismiss only if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). We review a trial court's resolution of a motion to dismiss de novo with no presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). When a trial court considers matters outside of the pleadings in ruling on a motion to dismiss, however, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." Tenn. R. Civ. P. 12.02(6); *see Smith v. Hauck*, 469 S.W.3d 564, 567 (Tenn. Ct. App. 2015). Summary judgment is appropriate only when the moving party establishes that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. As with a trial court's ruling on a motion to dismiss, we review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Smith*, 469 S.W.3d at 567.

Here, the trial court's orders indicate that it dismissed Plaintiffs' claims pursuant to Rule 12.02(6) for failure to state a claim upon which relief can be granted. Nevertheless, it appears that there is some confusion as to the applicable standard of review in this case. In their appellate brief, Plaintiffs set forth the standards of review applicable to both motions to dismiss and motions for summary judgment but do not specify which this Court should apply. Defendants, on the other hand, do not set forth any standard of review in their appellate briefs. It is not clear from the record whether the trial court considered matters outside the complaint in ruling on Defendants' motion

to dismiss. In concluding that Plaintiffs were alerted to the need to investigate their injuries on June 21, 2012, the trial court stated, "all of the necessary information was included in the medical records from June 21, 2012." Thus, it appears that the trial court may have considered materials other than the complaint in reaching its resolution. Regardless of whether we employ the standard of review applicable to motions to dismiss or motions for summary judgment, however, the facts that are material to the issues raised in this appeal are not in dispute, and we are only tasked with resolving issues of law. We therefore review the trial court's decision de novo with no presumption of correctness. *Myers*, 382 S.W.3d at 307; *see also Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 589 (Tenn. Ct. App. 2013) ("Regardless of whether we review the case under the standard for Rule 12.02 motions or that for Rule 56 motions, the issue presents a question of law[.]").

## STATUTE OF LIMITATIONS

Plaintiffs argue that the trial court erred in dismissing Mother's claims based on expiration of the statute of limitations. In reviewing a dismissal based on expiration of the statute of limitations, we must consider three elements–the length of the limitations period, the accrual of the cause of action, and the applicability of any tolling doctrines. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). Ascertaining the length of the limitations period is fairly straightforward in this case. Health care liability actions in Tennessee are subject to a one-year statute of limitations that runs from the date on which the claim accrues. Tenn. Code Ann. § 29-26-116(a)(1). If the plaintiff provides the defendants with pre-suit notice of his or her potential claims in compliance with Tennessee Code Annotated section 29-26-121(a) before the statute of limitations expires, then the statute of limitations is extended by 120 days. Tenn. Code Ann. § 29-26-121(c).

To determine the date on which the one-year statute of limitations began to run, we must ascertain when Plaintiffs' claims accrued. Generally, a cause of action accrues and the statute of limitations begins to run on the date when the injury occurs. *Vandergriff v. ParkRidge East Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015). However, Tennessee Code Annotated section 29-26-116(a)(2) provides that when "the alleged injury is not discovered within [the one-year statute of limitations period], the period of limitation shall be one (1) year from the date of such discovery." In enacting that provision, the legislature codified the common law discovery rule. *Sherrill v. Souder*, 325 S.W.3d 584, 592 (Tenn. 2010). Under the discovery rule, a claim accrues and the statute of limitations begins to run when the plaintiff discovers (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. *Id*. at 595. The discovery rule does not, however, permit plaintiffs to delay in filing their complaints until they know the full

extent of the damages, the specific type of legal claim they have, or all of the facts that affect the merits of the claim. *Redwing*, 363 S.W.3d at 458-59. Neither actual knowledge that the relevant legal standard of care was breached nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a health care liability action. *Sherrill*, 325 S.W.3d at 595. Thus, the discovery rule does not delay running of the statute of limitations until the plaintiff *actually* knows that he or she has a cause of action. *Vandergriff*, 482 S.W.3d at 556 (citing *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). Rather, the statute of limitations period begins to run once the plaintiff has information sufficient to alert a reasonable person of the need to investigate the injury. *Sherrill*, 325 S.W.3d at 593 n.7 (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008)). Thus, the plaintiff is charged with knowledge of those facts that, in the exercise of reasonable care and diligence, she should have discovered. *Id*. at 594. Generally, whether a plaintiff exercised reasonable care and diligence in discovering the injury or wrongful conduct is a fact question for the jury to determine. *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). In many cases, however, the facts material to a statute of limitations defense are not in dispute. *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 558 (Tenn. Ct. App. 2013) (quoting *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000)). When the undisputed facts demonstrate that the plaintiff knew, or in the exercise of reasonable care and diligence should have known, that he or she was injured as a result of the defendant's wrongful conduct, a judgment on the pleadings or dismissal of the claim is appropriate. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014) (citations omitted).

Here, Plaintiffs seek to invoke the discovery rule with regard to their claims against Dr. Hoeldtke and his employer, Mid-South Perinatal Associates, P.C.[5] Specifically, Plaintiffs argue that they did not have information sufficient to alert them of Dr. Hoeldtke's wrongful conduct until March 2015. According to Plaintiffs, Dr. Hoeldtke testified in a May 2013 deposition that he did not have any involvement in Mother's treatment on June 21, 2012. Although Dr. Hoeldtke admitted to seeing Mother in the hospital that day, he testified that he was just in her hospital room for a "social visit" and was not asked to evaluate her or participate in her care. Plaintiffs submit that they did not learn the true extent of Dr. Hoeldtke's involvement in Mother's treatment until they took Dr. Walker's deposition in March 2015. According to Plaintiffs, Dr. Walker testified that he consulted Dr. Hoeldtke during Mother's labor and that Dr. Hoeldtke recommended supplementing Mother's medication with Mestinon. Plaintiffs argue that Dr. Walker's March 2015 testimony directly contradicted Dr. Hoeldtke's May 2013 testimony and alerted them of their potential claims against Dr. Hoeldtke for the first time. They therefore contend that that their claims against Dr. Hoeldtke and Mid-

---

[5] In their appellate brief, Plaintiffs concede that their claims against the other defendants accrued on the date of their injuries–June 21, 2012.

- 9 -

South Perinatal Associates, P.C. accrued in March 2015 and the trial court erred in dismissing Mother's claims against those defendants based on expiration of the one-year statute of limitations.

In our view, the record conclusively establishes that Plaintiffs knew or should have known that they were injured as a result of Dr. Hoeldtke's wrongful conduct on June 21, 2012. Plaintiffs do not dispute that they were aware of their injuries on that date. Additionally, Plaintiffs do not dispute that they were aware of Dr. Hoeldtke's presence in the hospital room during Mother's labor on that date. Those two facts alone were sufficient to alert a reasonable person of the need to investigate any potential wrongful conduct by Dr. Hoeldtke. In any event, Plaintiffs' contention that they initially misunderstood the nature of Dr. Hoeldtke's presence during Mother's labor is not relevant to their claims against him. The only allegations of wrongful conduct by Dr. Hoeldtke in Plaintiffs' complaint concern his failure to recognize and take action in response to Mother's deteriorating condition at approximately 5:00 p.m. on June 21, 2012. However, Plaintiffs do not contend that they were ever unaware of Dr. Hoeldtke's presence in the hospital room at that time. As the trial court observed, Mother's medical records indicate that Dr. Hoeldtke was at her bedside at approximately 4:52 p.m. We therefore agree with the trial court's conclusion that the discovery rule did not delay the accrual of Plaintiffs' claims in this case.[6]

Having determined that Plaintiffs' claims accrued on June 21, 2012, we must consider whether Tennessee's legal incapacity statute–Tennessee Code Annotated section 28-1-106–applied to toll the statute of limitations as to their claims. The parties agree that the statute tolled the limitations period as to Child's claims because of his minority; however, they dispute whether it also tolled the limitations period as to Mother's claims. As it applies to this case, the statute provides:

> If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, or adjudicated incompetent, such person . . . may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights.

---

[6] In their appellate brief, Plaintiffs also seek to invoke the doctrine of fraudulent concealment with regard to their claims against Dr. Hoeldtke and Mid-South Perinatal Associates, P.C. Plaintiffs' counsel withdrew that issue during oral argument before this Court. We therefore decline to address it.

Tenn. Code Ann. § 28-1-106.[7]  Thus, the statute requires that an individual be "adjudicated incompetent" at the time his or her cause of action accrued in order to toll the statute of limitations.  The phrase "adjudicated incompetent" in this version of the statute was added by amendment effective July 1, 2011 to replace the phrase "of unsound mind." *See* 2011 Pub. Act 47 § 17.  By the same amendment, the phrase "legal rights are restored" replaced "the removal of such disability" and "restoration of legal rights" replaced "removal of such disability." *Id*.  Under prior versions of the statute, the test for determining whether an individual was of "unsound mind" was "whether that individual was unable to manage his or her day-to-day affairs at the time the cause of action accrued." *See Sherrill*, 325 S.W.3d 584, 601 (Tenn. 2010).

Plaintiffs contend that the legislature's 2011 amendments to Tennessee Code Annotated section 28-1-106 did not effect a substantive change in the law.  They therefore argue that the test for determining whether an individual is incompetent for purposes of tolling the limitations period remains the same as it was under earlier versions of the statute.  In support of that argument, they cite the statements of various legislators that the purpose of introducing the phrases "adjudicated incompetent" and "restoration of legal rights" to the statute was merely to replace outdated terminology and not to affect a substantive change in the law.  Additionally, while they do not argue that the statute's language is ambiguous, Plaintiffs encourage us to employ various legal maxims of statutory construction to avoid "an erroneous conclusion and manifest injustice."

The Tennessee Supreme Court has explained the principles that guide our construction of Tennessee statutes as follows:

> Our role is to determine legislative intent and to effectuate legislative purpose.  The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.  When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning.  When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme.

---

[7] Tennessee Code Annotated section 28-1-106 was amended effective April 27, 2016. *See* 2016 Pub. Act 932 § 1.  The 2016 amendment is inapplicable to this case because it applies "only to causes of action filed on or after" that date.  *Id*.  We must therefore apply the version of the statute effective when Plaintiffs' claims accrued on June 21, 2012.

> However, these *non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions."*

*Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (emphasis added) (internal citations omitted).

In our view, the language of the incapacity statute is clear and unambiguous. The phrase "adjudicated incompetent" clearly contemplates a judicial determination of incompetence. *See* Black's Law Dictionary 50 (10th ed. 2014) (defining the word "adjudicate" as "[t]o rule on judicially"). The legislature's use of the past tense "adjudicated" and the phrase "at the time the cause of action accrued" clearly indicates that the judicial determination of incompetence must occur prior to accrual of the cause of action. In the absence of ambiguity, we must therefore decline Plaintiffs' invitation to consider the statute's legislative history.

Moreover, in *Johnson v. UHS Lakeside, LLC*, this Court determined that a judicial determination of incompetence is required to toll the statute of limitations based on a contextual analysis of the same statutory language:

> [O]ur review of the statute at issue demonstrates that the meaning of the phrase "adjudicated incompetent" is clarified by the surrounding language in the statute. Specifically, the statute provides that the plaintiff may commence the action "after legal rights are restored" within the applicable statute of limitations unless that time exceeds three years and, in that case, within three years "from restoration of legal rights." Tenn. Code Ann. § 28-1-106. Pursuant to *nosicur a sociis*, the term "adjudicated incompetent" must be read in conjunction with the other parts of the statute that clearly contemplate a loss and restoration of "legal rights." Undoubtedly, it is the courts, rather than physicians, who can adjudicate an individual's legal rights. Furthermore, our holding is supported by this Court's Opinion in *Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn. Ct. App. 1982), which previously used the term "adjudication of incompetency" to refer to an order appointing a conservatorship, implying that this term denotes judicial action. Based on the foregoing, we conclude that the statutory language clearly contemplates that judicial intervention is necessary in order for an individual to be "adjudicated incompetent."

No. W2015-01022-COA-R3-CV, 2015 WL 9426034, at *6 (Tenn. Ct. App. Dec. 23, 2015); *see also Jones v. City of Franklin*, --- F.App'x. ----, 2017 WL 383383, at *8 (6th Cir. 2017); *Cobb v. Tenn. Valley Auth.*, 595 F.App'x. 458, 459 (6th. Cir. 2014). While Plaintiffs contend that this case is factually distinguishable from *Johnson* because, unlike

the plaintiff in that case, Mother was rendered incompetent by the wrongful conduct on which her claims are based, there is no basis for making such a distinction in the statute. Mother's claims accrued on June 21, 2012. She was "adjudicated incompetent" on November 29, 2012. As such, we agree with the trial court's conclusion that Tennessee Code Annotated section 28-1-106 did not apply to toll the statute of limitations as to Mother's claims.

Having ascertained the length of the limitations period, the date on which Plaintiffs' claims accrued, and the applicability of the tolling statute, we conclude that Mother's claims are barred by the statute of limitations. Mother's claims accrued on the date of her injuries–June 21, 2012. The one-year statute of limitations began to run on that date, and the limitations period was not tolled by Tennessee Code Annotated section 28-1-106. Even if the limitations period had been extended by 120 days pursuant to Tennessee Code Annotated section 29-26-121(c), the last day on which Mother's claims could have been filed was October 19, 2013. We therefore affirm the trial court's dismissal of Mother's claims in the September 29, 2015 complaint based on expiration of the statute of limitations.

## STATUTE OF REPOSE

Next, Plaintiffs argue that the trial court erred in dismissing their claims based on the expiration of the statute of repose. Except in certain circumstances not applicable to this case, Tennessee Code Annotated section 29-26-116(a)(3) provides that no health care liability action may be brought more than three years after the date on which the negligent act or omission occurred. That statute establishes an "an outer limit or ceiling superimposed upon the existing statute of limitations" commonly referred to as a statute of repose. *Calaway ex. rel Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005). Notably, the Tennessee Supreme Court has held that Tennessee Code Annotated section 28-1-106 does not toll the three-year statute of repose during a plaintiff's minority. *Id*. at 517. Thus, unlike the statute of limitations, the statute of repose was not tolled as to the Child's claims. Like the one-year statute of limitations, however, the three-year statute of repose is extended by 120 days if the plaintiff provides the defendants with pre-suit notice of his or her potential claims as provided in Tennessee Code Annotated section 29-26-121(a) before the statute of repose expires. Tenn. Code Ann. § 29-26-121(c).

The dispositive issue in this case, as it relates to the statute of repose, is whether Plaintiffs provided Defendants with pre-suit notice of their claims as provided in Tennessee Code Annotated section 29-26-121(a). The negligent acts and omissions on which Plaintiffs' claims are based occurred on June 21, 2012. The three-year statute of repose began to run on that date and expired on June 21, 2015. Although Plaintiffs did not file their complaint until September 29, 2015, they provided Defendants with pre-suit

- 13 -

notice of their claims on April 17, 2015. Thus, if Plaintiffs' pre-suit notice was sufficient, then the statute of repose was extended by 120 days to October 19, 2015, and their claims were timely filed. If it was not, then the statute of repose was not extended, and their claims were not timely filed. Because we have already affirmed the trial court's dismissal of Mother's claims based on expiration of the statute of limitations, we limit our discussion of this issue to Child's claims.

Tennessee Code Annotated section 29-26-121(a)(2)(E) states that a plaintiff intending to assert a potential health care liability claim "shall" include in his or her pre-suit notice "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."[8] That requirement is intended "to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013). Because the penalties imposed on entities that wrongfully disclose or obtain private health information in violation of HIPAA are severe, the sufficiency of the plaintiffs' medical authorizations is imperative. *Id.* (citing 45 C.F.R. § 164.508(a)(1) ("[A] covered entity may not use or disclose protected health information without an authorization that is valid under this section.")).[9] Nevertheless,

---

[8] HIPAA is an acronym for the Health Insurance Portability and Accountability Act of 1996. Federal regulations state that a HIPAA compliant authorization must include the following six elements:

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure[.]

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure[.]

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1).

[9] Entities that wrongfully disclose or obtain private health information in violation of HIPAA may face fines of up to $50,000 per offense and/or imprisonment of up to one year. *See* 42 U.S.C.A. § 1320d-6.

despite the importance of the requirement, the Tennessee Supreme Court has held that "less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim." *Id*. The court reasoned that, because not every non-compliant HIPAA medical authorization will result in prejudice to the defendant, plaintiffs must substantially comply, rather than strictly comply, with the requirements of that subsection. *Id*. Thus, in determining whether a plaintiff has substantially complied with the statutory requirement, the Tennessee Supreme Court has directed courts to consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance. *Id*. at 556. Additionally, the Tennessee Supreme Court has stated the following concerning the phrase "complete medical records":

> [T]he intended meaning of the phrase "complete medical records," as used in § 29-26-121(a)(2)(E), was not to grant defendants access to a plaintiff's entire medical history. Instead, we believe that the purpose of this requirement is to afford defendants access to all medical records that are relevant to the particular claim at issue. In determining whether medical records are relevant for purposes of litigation, defendants should continue to adhere to the "minimum necessary" standard that traditionally applies to a provider's use and disclosure of a patient's private health records under 45 C.F.R. § 164.502(b)(1): "When using or disclosing protected health information or when requesting protected health information from another covered entity or business associate, a covered entity or business associate must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request."

*Id*. at 558.

In this case, the trial court held that Plaintiffs' medical authorizations failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) because they did not permit Defendants to obtain all medical records relevant to the particular claims at issue. The trial court explained that, by limiting the records released to those for January 24, 2012; June 21, 2012; and July 16, 2012, the authorizations did not permit Defendants to obtain records from prenatal treatment that Mother received prior to the date of the delivery–in particular, those from her hospitalization for myasthenia gravis from May 31 to June 6, 2012. The trial court stated that those records were relevant to Defendants' evaluation of Plaintiffs' claims because the complaint alleged that, during Mother's hospitalization for myasthenia gravis, Dr. Hoeldtke made recommendations and developed plans for addressing the complications that might arise during her delivery. The trial court concluded that Plaintiffs failed to provide pre-suit notice as provided in

Tennessee Code Annotated section 29-26-121(a) and, as a result, they were not entitled to rely on the 120-day extended filing period and their claims were filed after expiration of the three-year statute of repose.

In their appellate briefs, the parties dispute the relevance of Mother's prenatal and hospitalization records at length. Plaintiffs argue that those records were not relevant to Defendants' evaluation of their claims because all of the wrongful conduct alleged in their complaint occurred on June 21, 2012. Defendants, on the other hand, argue that the records were relevant because they contain information regarding Mother's myasthenia gravis condition and the plans for her labor and delivery that Dr. Hoeldtke developed during her hospitalization.

Given the current procedural posture of this case, however, we do not need to resolve that issue. As we stated above, our discussion of this issue is limited to Child's claims. As such, we are concerned only with the sufficiency of the medical authorizations provided with Child's pre-suit notice. As Plaintiffs point out in their brief, records pertaining to the care Mother received during her pregnancy and her hospitalization from May 31 to June 6, 2012 are Mother's separate medical records. Defendants have not cited any legal authority that would authorize Child or Child's guardian to release medical records that belong to Mother. In our view, the medical authorizations provided with Child's pre-suit notice cannot be deemed insufficient solely because they do not authorize the release of medical records that Child had no authority to release. Defendants argue that, even if Child was not authorized to release Mother's prenatal and hospitalization records, his medical authorizations were insufficient because they did not permit the release of records from his hospitalization after the birth. In support of that argument, Defendants point out that Plaintiffs' appellate brief states Child was transferred to a non-party hospital on June 23, 2012; the implication being that Child received further treatment from Defendants for two days after June 21, 2012. Defendants argue that Child's medical records from that treatment would have also been relevant to their evaluation of his claims and, because his medical authorizations did not permit them to obtain those records, they failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). This argument is without merit. Plaintiffs' claims are related to Defendants' failure to recognize and take action in response to Mother's deteriorating condition during her labor on June 21, 2012. While records pertaining to the care Mother received during her pregnancy may have been relevant to determining Defendants' prior knowledge of the complications that might arise during Mother's labor, no such argument can be made with regard to records from the treatment Child received after the delivery. As such, those records were not relevant to Defendants' evaluation of Plaintiffs' claims, and Defendants were not prejudiced by Child's failure to authorize their release.

In sum, we conclude that the trial court erred in dismissing Child's claims based on expiration of the statute of repose. The negligent acts and omissions on which Plaintiffs' claims are based occurred on June 21, 2012, and the three-year statute of repose began to run on that date. While Child did not file his claims within three years of that date, he provided Defendants with pre-suit notice of his claims as provided in Tennessee Code Annotated section 29-26-121(a) on April 17, 2015. As such, the statute of repose was extended by 120 days to October 19, 2015 pursuant to Tennessee Code Annotated section 29-26-121(c), and Child's claims, filed on September 29, 2015, were timely. We therefore reverse the trial court's dismissal of Child's claims based on expiration of the statute of repose.

## MOTION TO AMEND COMPLAINT

Finally, Plaintiffs argue that the trial court erred in failing to consider the motion to amend their complaint they filed in response to Defendants' motions to dismiss. Tennessee Rule of Civil Procedure 15.01 provides that "[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . [o]therwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court." While the rule states that leave to amend "shall be freely given when justice so requires," determination of whether to allow an amendment to the pleadings is left to the sound discretion of the trial court. *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013). This Court has set forth the following factors a trial court should consider in ruling on a motion to amend: (1) undue delay in seeking the amendment, (2) lack of notice to the opposing party, (3) bad faith or dilatory motive of the moving party, (4) repeated failure by the moving party to cure deficiencies in earlier amendments, (5) futility of the proposed amendment, and (6) undue prejudice to the opposing party. *Hardcastle v. Harris*, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004).

Although it does not appear that the trial court made an express ruling on Plaintiffs' motion to amend their complaint, its failure to do so does not constitute reversible error in this case. The only substantive change that the proposed amended complaint would have made to Plaintiffs' original complaint was the addition of the allegation that they did not discover their claims until Dr. Walker revealed previously unknown factual information during a deposition in March 2015. The trial court considered those allegations in ruling on Defendants' motions to dismiss and concluded that they did not affect its analysis. In their appellate brief, Plaintiffs concede that point, stating, "It does not appear that this issue had any bearing on the trial court's decision." Thus, while it is not clear whether the trial court implicitly granted the motion to amend or implicitly denied it as futile, we see no reason to disturb its decision.

- 17 -

## CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed one-half to the appellants, Dorothy Cockrell and Beverly Woodruff, and their sureties and one-half to the appellees, Armie Walker, M.D., Elliott Clifton Roberts, Jr., M.D., West Tennessee OB-GYN Services aka West Tennessee OB-GYN Clinic, Nathan John Hoeldtke, M.D., Mid-South Perinatal Associates, P.C., Timothy Hutchinson, M.D., Michael Martindale, M.D., Professional Anesthesia Associates, P.C., Jackson Madison County General Hospital, West Tennessee Healthcare, Inc., Anna McIntyre, R.N., Kara Carter, R.N., Lisa L. Johnson, R.N., Jessica Perry, R.N., and Dena Etheridge, R.N., for all of which execution may issue if necessary.

_____

ARNOLD B. GOLDIN, JUDGE