IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 13, 2025 Session

## CHRIS MISSEL v. ANGELA LARKINS

**Appeal from the Chancery Court for Hamilton County**
**No. 24-0551          Jeffrey M. Atherton, Chancellor**

_____

**No. E2025-00419-COA-R3-CV**

_____

A plaintiff sued his son and daughter-in-law over, among other things, a warranty deed to disputed real property. The plaintiff later filed an amended complaint alleging several claims against the daughter-in-law's attorney. The attorney filed a motion to dismiss, arguing that the litigation privilege bars the plaintiff's claims against her. The trial court granted the motion to dismiss, and the plaintiff appeals to this Court. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, P.J., E.S., and THOMAS R. FRIERSON, II, J., joined.

John P. Konvalinka and Lawson Konvalinka, Chattanooga, Tennessee, for the appellant, Chris Missel.

Jordan D. Watson and Jared A. Davenport, Chattanooga, Tennessee, for the appellee, Angela Larkins.

## OPINION

### BACKGROUND

Chris Missel ("Plaintiff") is the father of Lawrence Missel ("Lawrence") and father-in-law of Ashley Missel ("Ashley"), who is married to Lawrence. This appeal stems from a property dispute that arose following the breakdown of Ashley and Lawrence's marriage.[1]

_____

[1] Because several parties to this case share the same last name, we refer to them by their first names.

According to the operative complaint, Plaintiff and his wife, who is not a party to this litigation, purchased a home in the Chattanooga area (the "Property") in 2020. Plaintiff informed the title company that Lawrence and Ashley would attend the closing for the sale and would "sign for" Plaintiff and his wife. Unbeknownst to Plaintiff, the deed to the Property (the "Warranty Deed") conveyed the Property to Plaintiff, Lawrence, and Ashley as tenants in common with right of survivorship. Ashley and Lawrence, their children, Plaintiff, and Plaintiff's wife all lived in the home together.

By the time Plaintiff discovered the purported error on the Warranty Deed, Ashley and Lawrence were divorcing. Prior to Plaintiff's discovery of the error, in May of 2023, as part of the divorce proceedings, Ashley signed a sworn statement providing that neither she nor Lawrence own any real property. At some point in 2024, Plaintiff realized that the Warranty Deed conveyed the property to him, Lawrence, and Ashley as tenants in common.

On July 24, 2024, Ashley's attorney, Angela Larkins ("Attorney Larkins"), sent a letter to Lawrence's divorce counsel stating: "[Plaintiff] has approached Ashley about signing a Quitclaim Deed to give him the house back. I highly doubt that he is asking Lawrence to do the same, but nonetheless, I have advised Ashley that to transfer this property, a significant marital asset, would be a violation of the temporary injunction unless, of course, we have a full agreement on the rest of the divorce issues . . . Since there are only three people on the deed, Ashley's interest in this property could easily be valued at $125,000." On August 7, 2024, Plaintiff filed his initial complaint against Ashley and Lawrence in the Hamilton County Chancery Court (the "trial court"). Plaintiff alleged, *inter alia*, that the Warranty Deed erroneously names Ashley and Lawrence as co-owners to the Property. Plaintiff sought a declaratory judgment providing that neither Ashley nor Lawrence has an ownership interest in the Property. In October of 2024, Plaintiff's counsel deposed Ashley. Ashley testified that she did not believe Plaintiff intended to include her on the Warranty Deed but that her understanding of her potential ownership interest in the Property changed following conversations with Attorney Larkins.

Plaintiff filed an amended complaint on December 18, 2024, raising claims against Attorney Larkins for tortious interference, civil conspiracy, and constructive trust. With regard to the tortious interference claim, Plaintiff alleged that he "had a prospective relationship with [Ashley] for her to file a quitclaim deed" conveying her purported interest in the property to Plaintiff, that Attorney Larkins "knew of that relationship" and "intended to cause a breach or terminate that relationship[,]" and that he was damaged by Attorney Larkins's actions. Plaintiff further asserted that Attorney Larkins acted with an improper motive or employed improper means by "misrepresent[ing] the law regarding mar[it]al property to threaten a violation of the temporary injunction, . . . interfer[ing] to deprive Plaintiff of his Property to enhance her client's bargaining power, and . . . misrepresent[ing]

We do so only to avoid confusion. No disrespect is intended.

the amount of ownership that [Ashley] was entitled to after [Ashley] swore [in filings made in the divorce action] she did not own any interest in the Property." As to his civil conspiracy claim, Plaintiff alleged that Ashley and Attorney Larkins "worked in concert to wrongfully deprive Plaintiff of his full rights in the Property" and "accomplished the deprivation of [his] full rights to his property by taking overt acts through unlawful means or for an unlawful purpose." Finally, as to his constructive trust claim, Plaintiff alleged that Ashley "obtain[ed] an interest in the Property through an element of fraud, concealment, duress, abuse of confidence, by commission of a wrong, or by any form of unconscionable conduct or questionable means, such that she ought not, in equity and good conscience, hold and enjoy."

Attorney Larkins filed a motion to dismiss on January 17, 2025, arguing that Plaintiff failed to state a claim against her for which relief can be granted. Attorney Larkins argued that the litigation privilege barred Plaintiff's claims against her as set forth in his amended complaint.[2] Plaintiff responded that the litigation privilege only applies when an attorney acts in good faith and does not shield Attorney Larkins's alleged conduct here because she employed wrongful means. The trial court heard Attorney Larkins's motion on February 10, 2025, and entered an order on February 24, 2025, dismissing Plaintiff's claims against her. In relevant part, the trial court held:

> But for the assertion of the "litigation privilege" asserted by [Attorney] Larkins, the Motion would be denied. As a result, the Court will limit its analysis to the litigation privilege defense.
>
> * * *
>
> As noted, the only element with which Plaintiff finds issue is application of the second: good faith. Within this argument, Plaintiff is correct in at least one respect: merely acting in your client's best interest, and not your own, is not dispositive of there being good faith. Nevertheless, in order to find bad faith, as noted above, there must be some element of fraud, misconduct, or illegality on behalf of the acting attorney. In this case, when examining the facts as plead, the Court is unable to find that [Attorney] Larkins acted in a manner inconsistent with good faith: when faced with a deed with her client's name on it, [Attorney] Larkins corresponded with opposing counsel, *in an ongoing divorce proceeding*, to explain that she had warned her client that, *in accordance with the statutorily-imposed injunction*, an attempt to quitclaim, *or transfer*, any interest her client may hold in the Property would be in violation thereof. As the Court both reads and applies Tenn. Code Ann. § 36-4-106(d)(1)(A)(i), this warning is not in bad faith. Though prior statements of [Ashley] do seem to acknowledge her lack of

[2] Attorney Larkins also raised an issue regarding service of process. This is not at issue on appeal.

awareness of her name on the deed or interest in the Property thereof, the warning [to opposing counsel], which was in accordance with the law as the Court understands it, does not lend itself to a finding of bad faith.

. . . Further, this Court is aware that the initial Complaint, filed a mere fourteen (14) days after [Attorney] Larkins' above warning to opposing counsel, alleged no wrongdoing on behalf of either [Ashley or Lawrence] as it was related to their names being, allegedly, improperly listed on the deed. Instead, such wrongdoing was only alleged after [Lawrence] . . . was permitted by Agreed Order to convey any interest he may hold in the Property to [Plaintiff], *one of the two mechanisms under Tenn. Code Ann. § 36-4-106(d)(1)(A)(i) to properly convey interests while under this injunction*. The Court, therein, is unable to find that there exist adequate or sustainable allegations of bad faith on behalf of [Attorney] Larkins and the articulated legal advice regarding a statutorily-imposed injunction, particularly when Plaintiff utilized the same statutorily-imposed mechanisms within said-injunction to directly receive the relief he so seeks.

On May 16, 2025, the trial court entered an agreed order certifying the dismissal order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Plaintiff timely appealed to this Court.

**ISSUES**

Plaintiff raises the following issues on appeal:
I. Whether the trial court erred in dismissing Plaintiff's claim of tortious interference based on the litigation privilege.

II. Whether the trial court erred in dismissing the entirety of the amended complaint against Attorney Larkins without discussing the civil conspiracy or constructive trust claim.

III. In the alternative, whether the trial court erred by dismissing the amended complaint with prejudice rather than without prejudice.

In her posture as appellee, Attorney Larkins argues that this appeal is frivolous and asks this Court to award her attorney's fees incurred on appeal.

**STANDARD OF REVIEW**

The trial court disposed of this case by granting Attorney Larkins's motion to dismiss for failure to state a claim for which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6).

- 4 -

A Rule 12.02(6) motion tests "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of such a motion is therefore determined by an examination of the pleadings alone. *Id.* The court should grant the motion to dismiss only if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).

*Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 493 (Tenn. Ct. App. 2017). "Our standard of review on appeal from a trial court's grant of a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions, and all allegations of fact in the complaint below are taken as true." *Brown v. Ogle*, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000) (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## DISCUSSION

The trial court granted Attorney Larkins's motion to dismiss after finding that the litigation privilege bars Plaintiff's claims. The litigation privilege is "an important tool in the pursuit of justice." *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 23 (Tenn. 2007). "Courts have repeatedly embraced the privilege because 'access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount.'" *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 231 (Tenn. Ct. App. 2010) (quoting *Simpson*, 232 S.W.3d at 23). The litigation privilege is "an absolute privilege," meaning it "cannot be defeated" so long as "the conduct at issue falls within certain parameters." *Id.* at 238. Those parameters are:

(1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self interest, (3) the conduct was related to the subject matter of proposed litigation that was under serious consideration by the attorney, and (4) there was a real nexus between the attorney's conduct and litigation under consideration.

*Id.*

Here, Plaintiff concedes that the only factor at issue is factor two, good faith. He argues on appeal that his allegations regarding Attorney Larkins's wrongful conduct are sufficient to survive a motion to dismiss. The relevant provision of the amended complaint provides:

[Attorney] Larkins's motive or the means she employed were improper—among other improper motives and means, she misrepresented the law regarding mar[it]al property to threaten a violation of the temporary injunction, she interfered to deprive Plaintiff of his Property to enhance her client's bargaining power, and she misrepresented the amount of ownership that [Ashley] was entitled to after [Ashley] swore she did not own any interest in the Property.

Plaintiff asserts in his brief that the trial court failed to apply the correct legal standard in considering the bad faith element in that the trial court did not accept the foregoing allegations as true. According to Plaintiff, the foregoing is a sufficient allegation of fraud and intentional wrongdoing by Attorney Larkins so as to take her conduct outside the litigation privilege's parameters.

We disagree and conclude that the trial court correctly dismissed all of Plaintiff's claims against Attorney Larkins pursuant to Rule 12.02(6) and the litigation privilege. The timeline of this case, as laid out in the amended complaint and its exhibits, is important.[3] The Warranty Deed at issue was executed in 2020, and the parties resided at the Property as a family. The parties did not realize that Lawrence and Ashley, in addition to Plaintiff, were on the Warranty Deed. At some point, Ashley and Lawrence began divorce proceedings during which Lawrence propounded discovery to Ashley. On May 22, 2023, Ashley signed sworn discovery responses stating that neither she nor Lawrence own any real property.

Per Plaintiff's own allegations, even he did not realize Ashley's name was on the Warranty Deed until sometime much later in 2024. He then filed suit against Ashley and Lawrence on August 7, 2024, over a year after Ashley signed her discovery responses. Attorney Larkins answered the initial complaint by filing a motion to dismiss on October 11, 2024, therein arguing that Ashley has a legitimate claim for one-third of the Property. Plaintiff's counsel deposed Ashley on October 29, 2024. At the deposition, an excerpt of which is attached as an exhibit to the amended complaint, Ashley testified that she did not initially realize she may have an interest in the Property. She further testified that her understanding of her interest in the Property changed following a conversation with Attorney Larkins. Plaintiff then filed his amended complaint naming Attorney Larkins as a defendant on December 18, 2024, therein alleging that Attorney Larkins misrepresented law and facts by asserting Ashley's ownership interest.

---

[3] *See Karr v. St. Thomas Midtown Hosp.*, No. M2020-00029-COA-R3-CV, 2021 WL 457981, at *3 (Tenn. Ct. App. Feb. 9, 2021) ("[A] trial court's consideration of exhibits attached to a complaint or incorporated by reference in the body of the complaint does not convert the motion to dismiss into a motion for summary judgment[]" (citing Tenn. R. Civ. P. 10.03)); *see also Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001) ("Exhibits attached to the complaint are part of the pleading for all purposes.").

The foregoing timeline establishes that Plaintiff takes issue with Attorney Larkins's legal theory that her client may have an interest in the Property. While Plaintiff makes much of the fact that Ashley signed a sworn statement saying she owns no property, a close examination of the amended complaint reveals that Ashley made this sworn statement well before it came to light whose names appear on the Warranty Deed. In the amended complaint, Plaintiff orders these events in such a way as to suggest that Attorney Larkins knew her client had no interest in the Property and subsequently reversed course to fraudulently assert her client's interest. However, the amended complaint and its exhibits reveal that when the Warranty Deed's contents came to light and Plaintiff sued Ashley over same, Attorney Larkins quickly asserted her client's rights in her answer to the initial complaint. When asked about this in her deposition, Ashley confirmed that her understanding of the Property's ownership changed following a conversation with her counsel.

Although Ashley signed a sworn statement stating she owns no real property, the Court is not bound by a layperson's understanding of their property interests. Nor can divorce attorneys base their theory of a case on a client's uninformed understanding of property. There is nothing out of the ordinary about a divorce litigant's argument as to marital property changing during the life of a case. Such is the nature of litigation; cases proceed, discovery occurs, and information comes to light that may or may not alter an attorney's understanding and theory of the case. This is particularly true in the context of divorce litigation, as attorneys frequently make creative arguments regarding whether property is separate or marital. Such is the fundamental purpose and policy behind the litigation privilege.

Contrary to Plaintiff's arguments, he did not make sufficient allegations as to bad faith. Distilled to its essence, his allegation is that he disagrees with Attorney Larkins's position that her client may have a stake in the Property and that her legal theory lacks merit. This is not so much a factual allegation as it is a legal conclusion and Plaintiff's opinion about the proper disposition of the Property. While Plaintiff correctly points out that we must construe his factual allegations as true, we "are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011) (quoting *Riggs v. Burson*, 941 S.W.2d 44, 47–48 (Tenn. 1997)).

"An ultimately unsuccessful legal step taken by an attorney does not necessarily equate to bad faith for purposes of the litigation privilege." *F.W. White & Assocs., LLC v. Chilton*, No. E2023-00414-COA-R3-CV, 2024 WL 3272314, at *10 (Tenn. Ct. App. July 2, 2024). Here, Plaintiff "conflate[s] an erroneous or unsuccessful act by an attorney with bad faith under the *Unarco* test." *Id.* As we have previously explained, the litigation privilege "is not limited to legal undertakings that bring fully successful results." *Id.* To the extent Plaintiff believes Attorney Larkins's theory does not hold water, he is free to challenge it. Likewise, "an attorney is subject to sanctions for conduct that violates the

Tennessee Rules of Professional Conduct." *Unarco*, 317 S.W.3d at 239. To the extent Plaintiff or his counsel believe sanctionable conduct has occurred, other, more appropriate remedies exist. *See id.* at 240 (noting that "an attorney's immunity from civil liability does not preclude other consequences, such as sanctions from the Board of Professional Responsibility").[4]

Accordingly, we affirm the trial court's conclusion that Plaintiff failed to state any claim for which relief can be granted, as the litigation privilege is an absolute bar to any of the purported causes of action. Plaintiff's second issue on appeal is that the trial court erred by not specifically addressing the civil conspiracy and constructive trust claims. Nonetheless, it is clear from the trial court's order that it concluded the litigation privilege bars *all* of Plaintiff's claims. Again, there are not sufficient allegations of bad faith regarding Attorney Larkins in the amended complaint, and her conduct therefore falls within the *Unarco* parameters. Plaintiff failed to state any claim for which relief can be granted, and it is not fatal that the trial court's order does not specifically use the terms "constructive trust" or "civil conspiracy." We do not need magic language in the order; rather, "we ascertain the intent of the court, and, if possible, make the order in harmony with the entire record in the case . . ." *Byrnes v. Byrnes*, 390 S.W.3d 269, 277 (Tenn. Ct. App. 2012) (citing *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 785 (Tenn. Ct. App. 2009)).

The final issue Plaintiff raises on appeal[5] is that the trial court erred in dismissing his claims with prejudice instead of without prejudice. This argument lacks merit. First, Plaintiff never made this request in the trial court. *See Weatherly v. Eastman Chem. Co.*, No. E2022-01374-COA-R3-CV, 2023 WL 5013823, at *4 (Tenn. Ct. App. Aug. 7, 2023) (appellant's argument that claims should have been dismissed without prejudice waived when raised for the first time on appeal). Further, the cases Plaintiff cites for this proposition are distinguishable from the case at bar. "An order granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted is an adjudication on the merits[,]" and Plaintiff cites no legal authority providing that a trial court cannot dismiss a complaint with prejudice pursuant to Rule 12.02(6). *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001). Discerning no error, we affirm the trial court.

Finally, Attorney Larkins requests her attorney's fees incurred on appeal, arguing that this appeal is frivolous.

---

[4] We express no opinion on whether such other remedies are appropriate under the facts of this case; we only note that such remedies exist.

[5] Plaintiff originally raised four issues on appeal, the third one challenging the trial court's decision to transfer the case to the Circuit Court for Hamilton County. Plaintiff withdraws that issue from consideration in his reply brief.

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citing *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). On one hand, section 27-1-122 "must be interpreted and applied strictly so as not to discourage legitimate appeals . . . ." *Davis*, 546 S.W.2d at 586. On the other hand, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* Given the competing considerations, whether to award damages under section 27-1-122 rests soundly within the reviewing court's discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) (citing *Whalum v. Marshall*, 224 S.W.3d 169, 180–81 (Tenn. Ct. App. 2006)).

As noted above, creative arguments are part of litigation. In the same manner that Attorney Larkins's arguments may be ultimately unsuccessful, but do not suggest bad faith, we cannot say that Plaintiff's arguments rise to the high level of frivolity under section 27-1-122. Under the circumstances, we exercise our discretion to deny Attorney Larkins's request for fees.

## CONCLUSION

The ruling of the Chancery Court for Hamilton County is affirmed. Costs on appeal are assessed to the appellant, Chris Missel, for which execution may issue if necessary.

 

_____
KRISTI M. DAVIS, JUDGE

- 9 -