IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2021 Session

## LISA BOYD v. DAVID BENJAMIN GIBSON IV M.D. ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-000034-18   Valerie L. Smith, Judge

_____

### No. W2020-01305-COA-R3-CV
_____

This is a lawsuit that challenges the appropriateness of care received by a cancer patient. Plaintiff originally filed suit in January 2018 and asserted a number of claims, some of which were predicated on alleged conduct occurring as early as August 2014. In an amended complaint, Plaintiff expanded her allegations, taking issue with conduct occurring as late as September 2016. The trial court ultimately dismissed Plaintiff's complaint in toto as it concerned the Defendants at issue in this appeal. Due to a lack of clarity regarding the court's specific bases for dismissal with respect to each of the claims involved, we vacate the judgment and remand for further consideration and findings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Duncan E. Ragsdale and William R. Bruce, Memphis, Tennessee, for the appellant, Lisa Boyd.

Margaret Cooper Roney, Natalie M. Bursi, and William C. Podesta, Memphis, Tennessee, for the appellees, David B. Gibson, IV, and Memphis Surgery Associates, P.C.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This litigation commenced on January 3, 2018 when the Plaintiff/Appellant, Lisa Boyd ("Ms. Boyd"), filed a health care liability case in the Shelby County Circuit Court ("the trial court"). Named as Defendants were Dr. David Gibson ("Dr. Gibson"), Memphis Surgery Associates, P.C., Dr. William Walsh ("Dr. Walsh"), and Baptist Memorial

Medical Group, Inc. The two Defendants specifically at issue in this appeal are Dr. Gibson and Memphis Surgery Associates, P.C. According to the complaint, Memphis Surgery Associates, P.C., employed Dr. Gibson and should therefore be held vicariously liable for his alleged negligent behavior. Prior to the filing of the complaint, in pre-suit notice letters dated October 10, 2017, Ms. Boyd's counsel gave Dr. Gibson and Memphis Surgery Associates, P.C. (collectively "the Defendants"), notice that Ms. Boyd was asserting a potential claim.[1]

As for the specific allegations of misconduct that gave rise to the lawsuit, the complaint recounted a series of events tracing back to July 22, 2014, when Dr. Charles Surles, a gastroenterologist, performed a colonoscopy of Ms. Boyd's colon with biopsy. According to the complaint, another doctor diagnosed the biopsies on July 23, 2014, and concluded that there was "INVASIVE ADENOCARCINOMA." Dr. Surles then referred Ms. Boyd to Dr. Gibson, a general surgeon, for her rectal cancer. Dr. Gibson allegedly met with Ms. Boyd on August 11 and August 22, 2014. Ms. Boyd alleged that on the August 22 date, Dr. Gibson informed her that her MRI showed no significant finding and that neoadjuvant[2] chemo/radiation therapy would not benefit her. Instead, he allegedly told Ms. Boyd that her best option was to proceed surgically with a low anterior resection to remove the rectal mass. According to Ms. Boyd, Dr. Gibson did not inform her of other surgical approaches, nor did he consult an oncologist or order carcinoembryonic antigen testing or any other testing. The complaint took specific issue with the alleged fact that "[o]n August 11, 2014 and August 22, 2014, Dr. Gibson did not explain to Lisa Boyd the survival rates with chemo/radiation therapy and more extensive rectal surgery that was total mesorectal excision."

The complaint stated that Dr. Gibson performed a low anterior resection of Ms. Boyd's rectum on September 16, 2014, averring that he "palpated the rectal cancer posteriorly along the rectum" and "failed to perform rigid proctoscopy with a sigmoidoscope." The complaint averred that the specimen removed was submitted to Dr. Anne Jordan, a pathologist, for surgical pathological diagnosis, whereupon it was found that the cancerous mass was "0.8 cm from the distal margin with a firm area adjacent to the mass which extends up to the inked margin." Dr. Jordan allegedly determined, among other things, that there were four of twenty-four lymph nodes positive for metastatic carcinoma.

The complaint alleged that Dr. Gibson then referred Ms. Boyd to Dr. Walsh, an oncologist, for chemotherapy on October 13, 2014, "without discussing chemo/radiation

---

[1] Per an affidavit of mailing attached to the complaint, the notice to the Defendants was sent on October 11, 2017, and delivered October 12, 2017. In connection with the proceedings below, the Defendants stated that they do not stipulate that proper pre-suit notice was given, and they contended that they did "not waive any defenses relative to Plaintiff's pre-suit notice." They merely argued that Ms. Boyd's compliance was inconsequential to their position seeking dismissal.

[2] "Neoadjuvant" refers to chemotherapy or radiation therapy given before cancer surgery.

therapy or consulting a radiation oncologist." Dr. Walsh allegedly subsequently misdiagnosed Ms. Boyd's rectal cancer as colon cancer and did not discuss or order carcinoembryonic antigen testing. Further, the complaint submitted that Dr. Walsh failed to discuss radiation therapy and survival rates for different therapies and did not refer Ms. Boyd for radiation therapy for her rectal cancer.

Ms. Boyd averred that she later discovered in August 2017 that her rectal cancer had reoccurred and spread, and she attributed blame for this result to the above described actions and/or inactions of Dr. Gibson and Dr. Walsh.[3] In relevant part, the complaint set out as follows in this regard:

> 21. In Memphis, Tennessee or a similar community in 2014, the recognized standard of acceptable professional practice for surgeons and oncologist when treating rectal cancer required the doctor to order preoperative CEA testing, to discuss and recommend total mesorectal excision, and to discuss and recommend chemo/radiation therapy for patients with rectal cancer because that therapy prevents reoccurrence and metastatic spread to other organ systems, with better than a 50% rate. In 2014, surgeons and oncologists had a duty to obtain informed consent by discussing alternative surgeries and alternative therapies, and the risks and benefits of each, including reoccurrence rates and survival rates.
> 22. In October 2014, Dr. Gibson's surgical approach and Dr. Gibson's failure and Dr. Walsh's failure to order chemo/radiation, or a combination of chemotherapy and radiation therapy, and CEA testing for Lisa Boyd's rectal cancer, allowed the rectal cancer to reoccur at the anastomosis site, to spread to and to invade the spinal cord, and metastasize to the liver, that was discovered in August 2017.
> 23. As a result of Dr. Gibson's and Dr. Walsh's failure to inform, recommend, and refer Lisa Boyd for chemo/radiation therapy of her rectal cancer on October 15, 2014, Lisa Boyd's rectal cancer reoccurred and metastasized or spread from her rectum to her spine and her liver. Had Dr. Gibson and Dr. Walsh ordered chemo/radiation therapy for Lisa Boyd's rectal cancer in October 2014, the cancer would probably not have reoccurred and spread or metastasized to her liver and spine. The contained anatomic space within the pelvis limits the extent of surgical resection and the rich lymphatic network of the pelvic side wall immediately adjacent to the rectum facilitates the spread of malignant cells into surgically inaccessible tissue, causing spread to other organ systems without radiation treatment.

---

[3] In a subsequently-filed affidavit, Ms. Boyd specifically attested that Dr. Walsh had informed her on August 7, 2017, that she needed immediate radiation therapy. She claimed this was the first time Dr. Walsh mentioned radiation therapy.

As for the specific legal theories and counts invoked against Dr. Gibson, Ms. Boyd's complaint alleged that he had failed to obtain informed consent, specifically asserting that from "August 11, 2014 to September 16, 2014 and beyond, [Dr. Gibson] had a duty to give [her] information about the treatment he proposed for [her] rectal cancer and available alternative treatments, including total mesorectal excision, and neoadjuvant chemo/radiation, together with the survival rates and reoccurrence rates for each treatment." Ms. Boyd also alleged that Dr. Gibson's conduct had fallen below the standard of acceptable professional practice between August 11, 2014, and September 26, 2014, by, among other things, his alleged failure to use rigid proctoscopy at surgery to measure the location of the rectal mass. In an additional denominated legal count, Ms. Boyd asserted that Dr. Gibson had falsified his operative report on September 16, 2014 by stating that the rectal mass was 2 cm from the distal margin when it was 0.8 cm from the distal margin. She further averred that her records were concealed from her when she requested them. In yet another count, Ms. Boyd alleged that from August 11, 2014 through October 13, 2014 and beyond, Dr. Gibson had falsely represented that she had colon cancer. Ms. Boyd further contended that it was foreseeable that her rectal cancer would likely reoccur without chemo/radiation therapy, and that the Defendants had been grossly negligent through their conduct.

On March 6, 2018, the Defendants filed a motion to dismiss Ms. Boyd's complaint. The motion contended that "[i]n regards to each of Plaintiff's allegations . . . Plaintiff failed to file her cause of action within the three-year statute of repose." The motion to dismiss was set to be heard on June 27, 2019, and subsequently, Ms. Boyd filed a document entitled "Plaintiff's Response to Motion for Summary Judgment."

Prior to the previously-scheduled setting on the motion to dismiss, an amended notice was filed indicating that the matter would be heard on July 26, 2019. The Defendants then filed a reply to Ms. Boyd's filed "Response to Motion for Summary Judgment." Therein, the Defendants argued that affidavits attached to Ms. Boyd's response should not be considered by the court inasmuch as their motion was one under Rule 12 of the Tennessee Rules of Civil Procedure, not Rule 56. These Defendants argued, however, that even if the court considered the affidavits so as to convert their motion to one for summary judgment, dismissal was still warranted. Moreover, in anticipation of the possibility that the trial court might be inclined to convert their motion to one for summary judgment, the Defendants submitted a statement of material facts pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure.

For her part, Ms. Boyd subsequently filed a formal response to the motion to dismiss and noted that she had moved to amend her complaint. Ms. Boyd's response alluded to the fact that she was now alleging that Dr. Gibson failed to give her informed consent up to September 26, 2016.[4] Ms. Boyd later requested that the court allow her amended complaint

---

[4] The proposed amended complaint, in part, stated that "at subsequent visits from 10-17-2014 to 9-

- 4 -

before ruling on the pending motion to dismiss.

In a response filed in opposition to Ms. Boyd's motion to amend her complaint, the Defendants acknowledged that Ms. Boyd's proposed amended complaint had expanded allegations concerning the lack of informed consent issue. Although they conceded that the statute of repose did not apply to lack of informed consent claims based on any visits between October 17, 2014 and September 26, 2016, the Defendants nonetheless maintained that such claims were barred by the statute of limitations and that the amendments were therefore futile. The trial court ultimately allowed Ms. Boyd to file her proposed amended complaint.

The amended complaint was later filed, and as briefly referenced previously, this complaint notably expanded the scope of Ms. Boyd's lack of informed consent allegations. In pertinent part, the amended complaint alleged as follows:

> 9. After surgery on 9-16-2014, at subsequent visits from 10-17-2014 to 9-26-2016 Dr. Gibson did not inform Lisa Boyd that four (4) regional lymph nodes might require radiation therapy, or that radiation was an option to prevent reoccurrence of the cancer in her rectum. Dr. Gibson never discussed cancer survival rates with her, or how radiation might reduce the possible reoccurrence of her rectal cancer.
> 10. Dr. Gibson did not discuss alternative treatment after surgery at visits from 10-17-2014 to 9-26-2016. She was not given a choice and he and Dr. Walsh told her she needed chemotherapy.
> 11. Had Dr. Gibson told Ms. Boyd of the cancer reoccurrence rates with and without radiation therapy she would have agreed to radiation therapy since she had four (4) cancerous lymph nodes.

Whereas the initial complaint had claimed that Ms. Boyd did not specifically discover Dr. Gibson's negligence until October 6, 2017, the date she claimed to have received records from him, the amended complaint averred that Ms. Boyd first learned of his negligence on or about August 7, 2017.[5]

The Defendants thereafter filed a motion to dismiss the amended complaint. The motion averred that each of Ms. Boyd's negligence claims, and some of her lack of

---

26-2016 Dr. Gibson did not inform Lisa Boyd that four (4) regional lymph nodes might require radiation therapy, or that radiation was an option to prevent reoccurrence of the cancer in her rectum." As will be discussed later in this Opinion, although the emphasis on visits taking place between October 17, 2014 and September 26, 2016 was obviously aimed at addressing the statute of repose problem potentially posed by the initial complaint, the Defendants maintain that claims connected to such visits are barred by the statute of limitations.

[5] Ms. Boyd had also maintained this position in her response to the Defendants' original motion to dismiss.

informed consent claims, were barred by the three-year statute of repose. The remaining lack of informed consent claims were, the motion submitted, barred by the one-year statute of limitations. Subsequent filings by Ms. Boyd contended that her claims were not time-barred, and she pointed to alleged fraudulent concealment by Dr. Gibson in support of her position. Ms. Boyd additionally pointed to evidence from Dr. Patrick Wolf, a surgical oncologist, in support of the maintenance of her underlying claims. According to Dr. Wolf's affidavit, radiation therapy, whether before or after surgery, reduces the likelihood of recurrence. Dr. Wolf stated that Dr. Gibson's actions had fallen below the standard of acceptable professional practice, and he specifically attested that Dr. Gibson had failed to obtain Ms. Boyd's informed consent by, among other things, failing to explain radiation therapy as an alternative treatment.

The trial court ultimately entered an order granting the Defendants' motion to dismiss on September 4, 2020, albeit while noting that it had treated the issue before it as one for summary judgment in light of the parties' submission of matters outside of the pleadings for its consideration. This timely appeal followed.

## DISCUSSION

As noted above, the trial court dismissed Ms. Boyd's complaint against the Defendants upon treating their motion to dismiss as one for summary judgment. *See Smith v. Hauck*, 469 S.W.3d 564, 567 (Tenn. Ct. App. 2015) (noting that, when a trial court considers matters outside of the pleadings, a motion to dismiss is converted to a motion for summary judgment). We review summary judgment rulings de novo and afford no presumption of correctness to the trial court's determination. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008). In order to determine whether a grant of summary judgment was proper, we are required to make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012). By rule, a motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

Naturally, in order for this Court to ascertain whether an error in the trial court's summary judgment ruling exists, we must first understand the basis for the court's judgment. The Tennessee Rules of Civil Procedure have been modified in recognition of this reality, a point that this Court has previously acknowledged:

> In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require the trial court to "state the legal grounds upon which the court denies or grants the motion," and to include such statement in the order reflecting the trial court's ruling. When the legal grounds for the trial court's decision are

omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative. "Without such a statement ... a reviewing court is left to wonder on what grounds the trial court granted the motion for summary judgment." *Eluhu v. HCA Health Servs. Of Tenn. Inc.,* No. M2008-01152-COA-R3-CV, 2009 WL 3460370, at *21[.] The 2007 amendment to Tenn. R. Civ. P. 56.04 was intended to cure this problem. The Rule's requirements are specific and without exception. Tenn. R. Civ. P. 56.04; *see also Eluhu,* 2009 WL 3460370, at *21(vacating the trial court's grant of summary judgment upon finding that the trial court did not state the legal grounds upon which the trial court granted the motion); *Burse v. Hicks,* No. W2007-02848-COA-R3-CV, 2008 WL4414718, at *2 (Tenn.Ct.App. Sept. 30, 2008)(finding noncompliance with Rule 56.04 where trial court's order merely provided "it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment of [the defendant] is well taken and should be granted pursuant to law and there being no material disputed fact," but proceeding with appellate review upon a finding that there was only a "clear legal issue").

*Winn v. Welch Farm, LLC*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *5 (Tenn. Ct. App. June 4, 2010). "In addition to assisting with appellate review, the requirement in Rule 56.04 that the trial court state the legal grounds for its decision helps promote respect for and acceptance of the legal system." *Friendship Water Co. v. City of Friendship*, No. W2019-02039-COA-R9-CV, 2020 WL 4919796, at *4 (Tenn. Ct. App. Aug. 21, 2020).

Upon cursory glance, the trial court's order does appear to offer a rationale for dismissal of this case, stating in relevant part as follows: "The Court finds the Plaintiff's claims are barred by the statute of limitations and statute of repose." The problem that exists in our view, however, is that it is unclear to us whether the trial court's conclusions are in fact intended to apply to all claims. That is, is it the trial court's determination that each of Ms. Boyd's asserted claims against the Defendants are barred by both the statute of limitations and statute of repose? On its face, the order arguably textually suggests so, but we note that even the Defendants in this case have conceded that certain of the allegations against them are not barred by the statute of repose. As to this point, we note that the operative complaint against the Defendants involves the assertion of a number of distinct claims by Ms. Boyd, with the included allegations spanning across a number of years. The court's order, however, paints with a broad conclusory brush, without any specific engagement of the wide breadth of allegations under certain counts and without any specific acknowledgment of the distinct claims asserted. Thus, beyond the initial question of whether the court actually intended to apply the cited bases for dismissal with respect to each asserted claim, we have some additional concern as to whether the court carefully considered each of the various claims asserted against the Defendants and the totality of the allegations leveled against them.

- 7 -

Contributing to this concern is the trial court's included finding on the issue of fraudulent concealment. The conclusion offered by the trial court merely states that Ms. Boyd "has not established that Defendant Dr. Gibson fraudulently concealed Plaintiff's **cause of action** such that the statute of repose was tolled." (emphasis added) Through this included finding, the court references a single, unnamed cause of action. Perhaps the court intended this analysis to apply to each of the claims asserted in the case, but we can only speculate to this end. As it is, the court's finding is confined to a single cause of action.

To recap the above discussion, although the trial court's order clearly appears to take issue with the timeliness of the assertion of Ms. Boyd's claims in a general sense, we cannot glean very much clarity beyond that preliminary understanding. The court's order makes no clear ruling as to the particular basis or bases for dismissal that should be respectively associated with the individual claims but instead appears to generalize the conclusions. This creates some ambiguity in our opinion as to what the court was actually intending to communicate, particularly in light of the fact that the record contains a concession by the Defendants that the *statute of repose* does not bar some of the allegations at issue in the case.[6] Moreover, because the trial court failed to engage with any of the claims specifically and textually limited its fraudulent concealment finding to a single unnamed "cause of action," we do not know for certain whether the court considered the totality of the allegations involved. Gaining assurance of this fact is of particular importance in this case given Ms. Boyd's assertion of several distinct claims, some of which are temporally diverse.

For the sake of clarity and to facilitate more meaningful appellate review, we conclude that the trial court's judgment should be vacated and the matter remanded for more detailed and specific findings and consideration. Indeed, in the absence of more specific engagement with the individual claims and a clearer expression of the basis or bases for dismissal respectively associated with each claim, we can only speculate as to whether all aspects of Ms. Boyd's allegations have been considered and whether the court actually intended to hold that every allegation at issue was barred by both the statute of limitations and the statute of repose. In stating the legal grounds applicable to its disposition with respect to each claim on remand, the trial court should take into proper account each claim's temporal diversity as necessary for resolution.

In connection with our decision to remand this case for reconsideration and further findings so that we can clearly understand the basis for the trial court's intended decision and gain assurance that all the claims of Ms. Boyd have been considered, we are of the opinion that one portion of the court's current order is deserving of specific comment. For present purposes, we restrict our discussion on the matter herein primarily in reference to

---

[6] Despite the concession, the Defendants maintain that the statute of limitations nonetheless serves as a bar to relief.

the "later" allegations against Dr. Gibson that were featured prominently in the amended complaint. Moreover, we assume that the rationale discussed below may have been intended by the trial court as a justification, in part, for why Ms. Boyd's lack of informed consent claims relative to her "later" treatment with Dr. Gibson were barred by the statute of limitations.[7]

Before highlighting the portion of the trial court's order alluded to, however, we first find it appropriate to mention again the nature of Ms. Boyd's lack of informed consent allegations. An examination of the amended complaint shows that Ms. Boyd partially predicated her lack of informed consent count upon alleged conduct occurring as late as September 2016. As to these later dates of treatment, the count alleged Dr. Gibson's failure to give her information about available alternative treatments, something that prior case law reveals is included within the rubric of informed consent. *See Miller ex rel. Miller v. Dacus*, 231 S.W.3d 903, 907 (Tenn. 2007) (noting that a patient must be informed of alternative methods of treatment). As is pertinent to the discussion here, the amended complaint averred that Dr. Gibson failed to, among other things, provide information that radiation was an option to prevent reoccurrence of cancer.

A lack of informed consent claim is subject to the one-year statute of limitations provided for in Tennessee Code Annotated section 29-26-116. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). Of note, the General Assembly has codified the common law discovery rule under Tennessee Code Annotated section 29-26-116(a)(2), which provides that "[i]n the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). "Under the discovery rule, a claim accrues and the statute of limitations begins to run when the plaintiff discovers (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 494–95 (Tenn. Ct. App. 2017). Case law further explains that the limitation period "begins to run once the plaintiff has information sufficient to alert a reasonable person of the need to investigate the injury." *Id.* at 495. A "plaintiff is charged with knowledge of those facts that, in the exercise of reasonable care and diligence, she should have discovered," and as a general proposition, "whether a plaintiff exercised reasonable care and diligence in discovering the injury or wrongful conduct is a fact question for the

---

[7] Again, we are speculating to some degree here, thus the necessity for vacating the order and remanding for a clearer expression of the court's ruling in the first instance. In connection with our comments herein, we do not intend to express an opinion as to whether the disclosures and information Ms. Boyd alleges were required to be shared with her were necessary in the context of Dr. Gibson's post-surgery treatment and care. That question is beyond the scope of the issues that were resolved by the trial court in its order, as the only basis from which the court appears to have attempted to resolve this case related to the *timeliness* of the legal claims. As it is, we note again that the record contains an affidavit from Ms. Boyd's expert, Dr. Wolf, that appears to speak to the alleged disclosure obligation on the part of Dr. Gibson relative to his post-surgery treatment.

jury to determine." *Id.* Yet, "[w]hen the undisputed facts demonstrate that the plaintiff knew, or in the exercise of reasonable care and diligence should have known, that he or she was injured as a result of the defendant's wrongful conduct, a judgment on the pleadings or dismissal of the claim is appropriate." *Id.*

"A lack of informed consent claim, by its very nature, arises when an individual becomes aware of the fact that his physicians did not disclose some risk or complication." *Roberts v. Bicknell*, 73 S.W.3d 106, 111 (Tenn. Ct. App. 2001). By way of illustration, this Court has previously held that the statute of limitations barred a plaintiff's claim "because the plaintiff knew or should have known that the defendant had not fully informed her as soon as she began experiencing unadvised complications." *Sampson v. Schneider*, 886 S.W.2d 764, 765 (Tenn. Ct. App. 1994) (citing *Housh v. Morris*, 818 S.W.2d 39, 42 (Tenn. Ct. App. 1991)). That is, it is the onset of adverse medical concerns arising after treatment that can potentially alert a plaintiff to a defendant's previous lack of disclosures and therefore trigger the limitation period concerning the plaintiff's lack of informed consent claim. Here, the record contains evidence that Ms. Boyd did not learn of the reoccurrence of her cancer until August 2017. As such, there is evidence that seems to point to the notion that she may have not known anything was amiss relative to Dr. Gibson's "later" treatment of her until August 2017. The trial court appears to have potentially concluded, however, that Ms. Boyd's lack of informed consent allegations relative to Dr. Gibson's "later" treatment were barred by the statute of limitations due to her general knowledge of radiation treatment as a treatment for cancer. Indeed, the court's order stated that "a reasonable person exercising reasonable diligence with the knowledge Plaintiff had and the position of Plaintiff would know that radiation was a treatment option for her cancer." It further stated that "no reasonable trier of fact could conclude that Plaintiff did not know that in this case radiation was a treatment for cancer." Although not spelled out by the court, it effectively concluded (assuming it was in fact applying the bar of the statute of limitations to these later allegations) that Ms. Boyd knew or should have known, more than a year prior to the pre-suit notice given, that Dr. Gibson had not provided all the necessary information to her to facilitate informed consent relative to the later course of treatment. The apparent logic of such a holding appears to be that, because Ms. Boyd had some general knowledge of radiation as a medical treatment option, she must have known, more than a year prior to her pre-suit notice, that Dr. Gibson did not fully inform her.

Assuming this was an intended holding by the trial court, we are somewhat perplexed by the rationale. Indeed, we have some question as to how the evidence at summary judgment establishes that Ms. Boyd had or should have had, more than a year prior to her pre-suit notice, knowledge of radiation as a potential treatment for her relative to the "later" dates in which she was in Dr. Gibson's care per the amended complaint.[8]

---

[8] As briefly stated in an earlier footnote, we express no opinion whatsoever if Dr. Gibson had a duty to provide the information about which Ms. Boyd complains relative to these "later" allegations.

There is some evidence pointing to an awareness on Ms. Boyd's part that radiation was a potential neoadjuvant treatment, but it is unclear to us what in the record evidences her knowledge that radiation was a feasible alternative treatment available to her post-surgery. One of Dr. Gibson's responses to Ms. Boyd's requests for admissions generally points to "Plaintiff's medical records," without direct citation, that an associate of Dr. Gibson, Dr. Monroe, discussed radiation therapy post-surgery.[9] However, we note that in her deposition, Ms. Boyd testified that she did not remember Dr. Monroe discussing radiation therapy with her.

Although there is, as mentioned above, evidence pointing to the fact that Ms. Boyd had some awareness that radiation can be used prior to surgery for some cancers, it is unclear how Ms. Boyd's knowledge of that fact evidences knowledge that radiation was an available course of treatment post-surgery in the context of Dr. Gibson's later treatment of her. Moreover, as alluded to previously, we are unclear what triggered, before any knowledge on her part that her cancer had reoccurred, a duty for her to investigate what should have allegedly been discussed with her on the dates of Dr. Gibson's "later" treatment. Indeed, before any proof of injury potentially connected to Dr. Gibson's "later" treatment, what obligation did Ms. Boyd have to inquire as to whether that particular treatment was proper?

In any event, the court's apparent emphasis on the antecedent knowledge Ms. Boyd may have had about radiation is confusing given the limited information she apparently did have about the matter according to certain evidence. Indeed, although there is evidence that Ms. Boyd had knowledge of radiation treatment generally, it is unclear to us how, based on that evidence, no reasonable trier of fact could conclude that Plaintiff did not know that radiation was an alternative treatment option for her relative to Dr. Gibson's post-surgery care. As to this question, we take stock of two sources of evidence in the record pertaining to the topic of Ms. Boyd's knowledge of radiation treatment: Dr. Gibson and Dr. Walsh. In one of their filings in the trial court, the Defendants cited to Dr. Gibson's declaration wherein he stated that he had explained to Ms. Boyd that "neoadjuvant radiation would not be recommended or beneficial to treat the type of cancer that she had." So, there is evidence from Dr. Gibson that Ms. Boyd was aware that neoadjuvant radiation was not helpful for her. When that evidence is coupled with evidence about what Dr. Walsh claims to have discussed with her, the trial court's finding relative to what "no

_____

Notwithstanding the absence of clarity accompanying its order, the trial court only facially addressed the timeliness of Ms. Boyd's assertion of her claims, and we restrict our discussion within this analytical framework.

[9] Upon our examination of the record, we note that there is an exhibit that appears to present a progress note from Dr. Monroe that, while not completely legible, appears to express some "doubt" as it relates to radiation therapy. Putting aside any questions surrounding how this note appears to evidence a general dismissiveness of radiation therapy, we have noted herein that Ms. Boyd maintained in her deposition that she did not recall any discussion with Dr. Monroe about radiation as a post-surgery treatment.

reasonable trier of fact could conclude" is especially suspect, particularly as it relates to Ms. Boyd's knowledge of the sufficiency of Dr. Gibson's disclosures concerning his "later" treatment. Indeed, in his deposition testimony, Dr. Walsh stated, in apparent relation to a visit on October 15, 2014, that he discussed with Ms. Boyd that radiation therapy was something that was *not* helpful for her. Notably, when the Defendants referenced Dr. Walsh's testimony concerning his communications with Ms. Boyd in the trial court, they signaled his testimony as supporting the proposition that post-operative radiation was "not a viable option to treat her cancer." Why, in the face of these communications—which seem to discount the viability of radiation as a proper treatment for her—would Ms. Boyd necessarily have reason to believe that Dr. Gibson's alleged non-disclosure about radiation treatment relative to his "later" care was insufficient? Moreover, given (1) what Dr. Gibson evidently told Ms. Boyd about neoadjuvant radiation and (2) the alleged nonviability of post-operative radiation as communicated by Dr. Walsh, could no reasonable trier of fact conclude that Ms. Boyd did not know that radiation was an available treatment option for her cancer relative to Dr. Gibson's "later" care? Before the reoccurrence of her cancer, what gave Ms. Boyd reason to suspect that what Dr. Gibson communicated about his later course of treatment was insufficient?

In light of the above discussion, we remand this matter for reconsideration and a clearer articulation of the legal grounds upon which the trial court adjudicates each of Ms. Boyd's claims for relief. As noted herein, although we do not understand precisely what the trial court intended to rule as it relates to each claim asserted and whether the court actually considered all claims for relief, we have noted some concerns we have about the trial court's apparent reliance on the scope of Ms. Boyd's knowledge about radiation therapy, assuming that the court's finding was in service of a statute of limitations conclusion. We have raised our concerns on this matter in particular relation to Ms. Boyd's lack of informed consent claims and what a reasonable person would know, and when, concerning the sufficiency of Dr. Gibson's disclosures in the context of his "later" post-surgery treatment of Ms. Boyd.

In revisiting the matter on remand, the trial court should clearly state the grounds concerning *each* claim it is adjudicating, including in its discussion of the issue of fraudulent concealment. Complying with this task appears to demand, among other things, that the court acknowledge the temporal diversity of certain claims.

## CONCLUSION

The trial court's judgment is hereby vacated, and the case is remanded for further findings and consideration in light of this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE